OSCAR WEBBER AND CLARENCE W. CHAPIN v. HARRIET N. TURNER ET AL.

*Bills and notes—Payment—Collateral security.*

This case involves the question whether stock was taken as collateral security to, or in payment of, the notes sued upon. And it is held that the circuit judge erred in submitting the question to the jury, the evidence showing conclusively that the stock was taken as security, and not as payment.

Error to Montcalm.    (Smith, J.)    Argued January 13, 1893.    Decided February 10, 1893.

*Assumpsit.*    Plaintiffs bring error.    Reversed.    The facts are stated in the opinion.

*F. A. Miller* and *Ellis, Nichols & Miller,* for appellants.

*M. C. Palmer* (*Morse, McGarry & McKnight,* of counsel), for defendants.

LONG, J.　The main question in this case is whether there was any testimony tending to show that the stock in question was transferred in payment of the notes in suit.

It appears without contradiction that the defendants, who were operating a large flouring-mill at Stanton, Montcalm county, Mich., some time in May, 1887, became insolvent.　Thereupon they called their creditors together for the purpose of making some satisfactory arrangement with them by which the property they then owned should pay the debts.　At this time some of the indebtedness was evidenced by notes indorsed by different parties, some by notes of the firm indorsed by one of its members, and some obligations existed for which no notes were issued. Upon consultation with the principal creditors, among whom were the plaintiffs, who participated in the negotiations, it was decided to put the entire property of the defendants into a stock company, and issue stock to the different creditors, in proportion to the debts held by them, in payment and satisfaction of such debts.　The arrangement was consummated, the corporation organized, the assets of the firm transferred to it, and stock issued to each creditor in the amount of the indebtedness in payment thereof.　There were certain small debts which were not provided for in this way, but some personal property and book accounts were retained by the defendants, converted into money, and those small debts paid.

It is contended by defendants that the agreement between them and their creditors was that this stock should be taken in full payment, discharge, and satisfaction of their debts.　At this time the plaintiffs held the firm notes for nearly $6,500, and stock was issued to them for $6,500. The firm notes representing this indebtedness were retained by the plaintiffs, and not delivered to defendants until

about six months afterwards. When stock came to be issued for the indebtedness that was represented by the indorsed notes, it was issued directly to a Mr. Weatherwax, who was an indorser on one of the notes, and to William F. Turner, who was an indorser on notes to the amount of $11,000, he receiving $11,000 of the stock under this arrangement, as it was originally contemplated should be done. No demand was ever made upon the defendants for payment of principal or interest until the suit in question was brought.

The testimony was taken before the court and jury, and, under the charge of the court, submitted to the jury, who found the issue in favor of the defendants, and rendered judgment for them for the difference between the amount of stock turned over to the plaintiffs and the amount of indebtedness due from the defendants to the plaintiffs, which, upon motion for new trial was remitted, and is not now before the Court. All the errors assigned relate to the charge of the court as given, as there were no requests proposed, no testimony offered which was excluded, and no exception to testimony introduced. The plaintiffs introduced the notes declared upon, amounting, with interest, to $15,828.89, and rested.

M. A. Reynolds, one of the defendants, was then called to testify in behalf of the defendants. From his testimony it appears that in May, 1887, the firm of Turner & Reynolds became insolvent, and called their creditors together to make an arrangement with them by which the property was to pay the debts. A stock company was formed. The plaintiffs held notes amounting to nearly $6,500, and stock was issued to them for that amount. These notes had the indorsement of the witness Reynolds only. They were the company's own notes. William F. Turner was an indorser at the time upon $11,000 of notes given to the plaintiffs by the firm of Turner & Reynolds,

and stock was issued to William F. Turner to secure him as an indorser.   Some time the last of August or first of September, Mr. Turner, being interested in some lumber operations, became embarrassed, and transferred his stock to the plaintiffs, the witness making the transfer.   Neither of the plaintiffs was present at the time.   A day or two after the transfer was made, Chapin, one of the plaintiffs, inquired of Reynolds what there was about Turner's condition.   He was told what the difficulty was, and the witness says that Mr. Chapin said, "He has transferred his stock to us."   Witness said, yes, but that it should be transferred on the books of the company, to be notice to the general public.   Chapin went and got the stock, and gave it to witness, who was secretary of the company, and he transferred it on the books.   Two shares were left in Turner's name, at the suggestion of the witness, so that he could continue a director, and the balance was transferred to the plaintiffs.   Witness was then asked:

"What was said at that time by you to Mr. Chapin about the transfer of this stock, regarding these notes?

"*A.* There was nothing said about it between us."

Witness further testified that he told Chapin that he had said to Turner not to put the stock in his general assets in his assignment, because the stock was issued to him to pay the notes, and the stock should go to whoever held the notes.   Witness also testified, in relation to the indorsements appearing upon the notes, that the notes held by plaintiffs, when they were figured up, were less in amount by $272.22 than the $6,500 of stock held by them, and that amount was due the witness; that Chapin then delivered the notes for which he held the stock, and the $272.22 was indorsed on the notes in suit, Chapin saying that would pay the interest on those notes to date.   Witness himself made the indorsements on the notes as so much paid.

Mr. Chapin was called on behalf of the plaintiffs, and testified that the plaintiffs never claimed to be the owners of the stock transferred by Turner to them, but held it as collateral security to the notes in suit; that the purpose of the transfer of the Turner stock was to secure them on the Turner indorsements, whatever might happen to him; that there was a surplus on the stock held by them—that is, the $6,500—over the notes they held, and that Mr. Reynolds indorsed it on the notes indorsed by Turner, to pay as far as it would go; that Mr. Reynolds made the indorsement with this understanding. Defendant William F. Turner was not sworn as a witness in the case.

The claim of the plaintiffs is that the stock was taken by them as security merely; while the defendants claim that it was issued by William F. Turner in payment of these notes, so far as Turner & Reynolds are concerned; and that, by the arrangement made in August or September following, the stock was taken by the plaintiffs in full payment of the notes. Substantially all the testimony bearing upon these questions has been set out, and upon which the court below left the question as one of fact for the determination of the jury.

The only question discussed by counsel in this Court was whether there was testimony warranting the court in submitting the question to the jury, plaintiffs claiming that there was not a *scintilla* of testimony showing or tending to show that the plaintiffs took the $11,000 in stock in payment of the notes.

The court below, as we think, was in error in submitting the question to the jury. The plaintiffs had possession of the notes, which showed the indorsement of the surplus over their stock of $6,500. Mr. Turner was an indorser upon these notes. At the time of the first arrangement, plaintiffs took stock for the amount of notes

94 MICH.,—38.

held by them, and not indorsed by Turner, and Turner took the stock for the purpose of securing himself upon his indorsements on the $11,000 of the notes. There is nothing in the arrangement made in August or September following, showing or tending to show that the plaintiffs agreed or intended to surrender these notes in suit to the defendants or Turner, or to relieve them thereon. On the other hand, the proofs show conclusively that no such agreement was made, but that the plaintiffs treated the stock assigned to them by Turner as collateral to the notes, and as further security, which they desired on account of Turner's embarrassed condition, so that the stock might not pass under the assignment to the general creditors of Turner.

Under the facts stated, the court should have directed the verdict in favor of the plaintiffs.

The judgment below must be reversed, with costs, and a new trial ordered.

The other Justices concurred.